**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| **PHYSICIANS PRIMARY CARE, PLLC,** ) | |
| **PLAINTIFF/** ) | |
| **COUNTER-CLAIM DEFENDANT,** ) | |
| ) | |
| **V.** ) | **Cause No. _____** |
| ) | |
| **PREMIER MEDICAL, INC.,** ) | |
| ) | |
| **AND** ) | |
| ) | |
| **VESSEL MEDICAL, INC.** ) | |
| **DEFENDANTS/** ) | |
| **COUNTER-CLAIM PLAINTIFFS.** ) | |

Come the Defendants, Premier Medical, Inc. ("Premier"), and Vessel Medical, Inc. ("Vessel") (collectively, "Defendants"), by counsel, and for their Answer and Counterclaim against Plaintiff/Counterclaim Defendant, Physicians Primary Care, PLLC ("PPC"), state and allege as follows:

## ANSWER

### FIRST AFFIRMATIVE DEFENSE

1.     Plaintiffs have failed to state a claim upon which relief can be granted against Defendants, and their Complaint should therefore be dismissed and held for naught.

### SECOND AFFIRMATIVE DEFENSE

2.     Defendants admit the allegations contained in ¶¶ 1, 2, 3, 5, 10, 26, and 39 of the Complaint.

3.     Defendants deny those allegations contained in ¶¶ 8, 20, 27, 29, 31, 32, 35, 36, 37, 42 and 43 of Plaintiff's Complaint.

4.      Defendants are without sufficient information and/or knowledge upon which to form a basis for the truthfulness of the allegations set out in ¶¶ 15, 16, 18, and 30 of Plaintiff's Complaint and the same are therefore denied.

5.      In response to the allegations contained in ¶ 4 of Plaintiff's Complaint, Defendants assert that the United States District Court, Southern District of Indiana, New Albany Division, has subject matter jurisdiction, and venue is properly before this court. To the extent the remaining allegations of ¶ 4 of Plaintiff's Complaint are Plaintiff's summary of its own Complaint, no response is required by Defendants. To the extent a response is required, Defendants deny the remaining allegations set forth in ¶ 4 of Plaintiff's Complaint.

6.      In response to the allegations contained in ¶ 6 of Plaintiff's Complaint, Defendants admit that drafts of proposed agreements were exchanged, including but not limited to the draft attached to the Complaint as Exhibit 1; however, deny that the proposed agreement attached as Exhibit 1 to the Complaint embodied all terms, or all versions of terms, that were discussed with respect to the proposed agreement.  Defendants deny the remaining allegations set forth in ¶ 6 of Plaintiff's Complaint.

7.      In response to the allegations set forth in ¶ 7 of Plaintiff's Complaint, Defendants admit only that around August of 2015, PPC began sending test samples to the Premier lab in South Carolina.  Defendants specifically deny that they had or assumed responsibility for determinations of medical necessity, appropriateness, or eligibility for insurance coverage for any services provided to Plaintiff, and specifically deny that they billed or invoiced any third-party payor on behalf of Plaintiff for any such services.  Defendants are without sufficient information and/or knowledge upon which to form a basis for the truthfulness of the remaining allegations set out in ¶ 7 of Plaintiff's Complaint and the same are therefore denied.

2

8.      In response to the allegations set forth in ¶ 9 of Plaintiff's Complaint, Defendants deny that the events described occurred at the same time as events which Defendants deny occurred, as alleged in ¶ 8 of Plaintiff's Complaint, which is explicitly denied.  Defendants admit that there were ongoing communications regarding the potential lease agreement and admit that drafts of proposed agreements were exchanged, including but not limited to the draft attached to the Complaint as Exhibit 2; however, deny that the lease proposal attached as Exhibit 2 to the Complaint embodied all terms, or all versions of terms, that were discussed with respect to the potential lease agreement. Defendants deny the remaining allegations set forth in ¶ 9 of Plaintiff's Complaint.

9.      In response to those allegations set forth in ¶ 11 of Plaintiff's Complaint, Defendants admit that in approximately March, 2016, they began to operate a lab services business in certain premises leased from Plaintiff, which were separate from Plaintiff's own in-house lab facilities.  Defendants deny the remaining allegations set forth in ¶ 11 of Plaintiff's Complaint.

10.     In response to those allegations set forth in ¶ 12 of Plaintiff's Complaint, Defendants admit that in approximately March, 2016, pursuant to an agreement with Plaintiff, they began to provide test methodologies, staffing, and other services for Plaintiff's own in-house lab operation, which utilized testing machinery owned by Plaintiff, and at or around the same time frame, Defendants began to operate a lab services business in certain premises leased from Plaintiff, which were separate from Plaintiff's own in-house lab facilities, and which utilized testing machinery owned by Defendants and located in Defendants' separate leased premises. Defendants specifically deny that they had or assumed responsibility for determinations of medical necessity, appropriateness, or eligibility for insurance coverage for

3

any services provided to Plaintiff, and specifically deny that they billed or invoiced any third-party payor on behalf of Plaintiff for any such services.   Defendants deny the remaining allegations set forth in ¶ 12 of Plaintiff's Complaint.

11.    In response to those allegations set forth in ¶ 13 of Plaintiff's Complaint, Defendants admit that Defendants operated a lab services business separate and distinct from Plaintiff's own in-house lab operation; that tests for Plaintiff utilized testing machinery owned by Plaintiff; and that tests performed by Defendants for clients other than Plaintiff utilized testing machinery owned by Defendants and located in Defendants' separate leased premises. Defendants deny the remaining allegations set forth in ¶ 13 of Plaintiff's Complaint.

12.    In response to those allegations set forth in ¶ 14 of Plaintiff's Complaint, Defendants admit that at relevant times, they employed a lab technician who worked in Defendants' lab services business, which was separate from Plaintiff's own in-house lab operation.  Defendants deny the remaining allegations set forth in ¶ 14 of Plaintiff's Complaint.

13.    In response to those allegations set forth in ¶ 17 of Plaintiff's Complaint, Defendant deny that they wrongfully withheld any rent payments to Plaintiff, but admit that no rent payments were made.   Defendants deny the remaining allegations set forth in ¶ 17 of Plaintiff's Complaint.

14.    In response to those allegations set forth in ¶ 19 of Plaintiff's Complaint, Defendants admit that they sent invoices to PPC which were not paid.  Defendants deny the remaining allegations set forth in ¶ 19 of Plaintiff's Complaint.

15.    In response to those allegations set forth in ¶ 21 of Plaintiff's Complaint, Defendants admit that tests for Plaintiff did not utilize testing machinery owned by Defendants and located in Defendants' separate leased premises.  Defendants deny the remaining allegations

4

set forth in ¶ 21 of Plaintiff's Complaint.

16.     In response to ¶ 22 of Plaintiff's Complaint, Defendant incorporates each of its responses to the preceding paragraphs as if fully set forth herein.

17.     In response to those allegations set forth in ¶ 23 of Plaintiff's Complaint, Defendants admit that Plaintiff began utilizing Defendants' South Carolina lab for services. Defendants deny the remaining allegations set forth in ¶ 23 of Plaintiff's Complaint.

18.     In response to those allegations set forth in ¶ 24 of Plaintiff's Complaint, Defendants admit that they agreed in principal to lease certain premises from Plaintiff for fair market value, and began utilizing the said premises, and further admit that drafts of proposed agreements were exchanged, including but not limited to the draft attached to the Complaint as Exhibit 2; however, deny that the lease proposal attached as Exhibit 2 to the Complaint embodied all terms, or all versions of terms, that were discussed with respect to the potential lease agreement.   Defendants deny the remaining allegations set forth in ¶ 24 of Plaintiff's Complaint.

19.     In response to those allegations set forth in ¶ 25 of Plaintiff's Complaint, Defendants deny that any services provided to the Plaintiff's in-house laboratory were provided pursuant to any lease agreement; such services, if any, were provided pursuant to arrangements between Plaintiff and Defendants for Defendants to provide test methodologies, staffing, and other services for Plaintiff's in-house laboratory. Defendants deny the remaining allegations set forth in ¶ 25 of Plaintiff's Complaint.

20.     In response to those allegations set forth in ¶ 28 of Plaintiff's Complaint, Defendants admit that there have been communications with Plaintiff regarding invoices delivered by Defendants.   Defendants deny the remaining allegations set forth in ¶ 28 of

Plaintiff's Complaint.

21.    In response to ¶ 33 of Plaintiff's Complaint, Defendant incorporates each of its responses to the preceding paragraphs as if fully set forth herein.

22.    In response to those allegations set forth in ¶ 34 of Plaintiff's Complaint, Defendants admit that invoices for services rendered have been delivered to Plaintiff by Defendants.  Defendants deny the remaining allegations set forth in ¶ 34 of Plaintiff's Complaint.

23.    In response to ¶ 38 of Plaintiff's Complaint, Defendant incorporates each of its responses to the preceding paragraphs as if fully set forth herein.

24.    In response to those allegations set forth in ¶ 40 of Plaintiff's Complaint, Defendants admit that operated a lab services business in space leased from Plaintiff, separate and apart from Plaintiff's in-house lab facilities, from approximately March, 2016 to October, 2016.  Defendants deny the remaining allegations set forth in ¶ 40 of Plaintiff's Complaint.

25.    In response to ¶ 41 of Plaintiff's Complaint, Defendants deny that they have wrongfully withheld any rent or expenses.   Defendant's admit the remaining allegations contained in ¶ 41 of Plaintiff's Complaint.

26.    Defendants deny all allegations in the Complaint not specifically admitted herein.

## THIRD AFFIRMATIVE DEFENSE

27.    Plaintiff's Complaint and the claims alleged therein are barred by the affirmative defenses of unclean hands, accord and satisfaction, fraud, laches, estoppel, waiver, license, failure to exhaust administrative remedies, and/or failure to comply with the necessary prerequisites to maintain this action in this forum.

## FOURTH AFFIRMATIVE DEFENSE

28.    Plaintiff's Complaint and the claims alleged therein are barred by Plaintiff's

failure to name one or more indispensable parties.

### FIFTH AFFIRMATIVE DEFENSE

29.     Plaintiff's Complaint and the claims alleged therein are barred by the unconscionability of the Plaintiff's conduct, including but not limited to its conduct described in the Counterclaim filed herewith, by the statute of frauds, doctrines of unclean hands, intentional misrepresentation, negligent misrepresentation, mutual mistake, frustration of purpose, failure of consideration, and anticipatory breach of contract.

### SIXTH AFFIRMATIVE DEFENSE

30.     Plaintiff's claims are subject to their duty to mitigate adequately any of their alleged damages, if any there be, which is specifically denied, and have failed to do so. Defendants are entitled to a setoff against Plaintiff's damages in the amount which could have been avoided but for such failure to mitigate.

### SEVENTH AFFIRMATIVE DEFENSE

31.     Plaintiff's claims are barred by the applicable statute(s) of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

32.     Plaintiff's Complaint and the claims alleged therein are barred in whole or in part by the affirmative defense of failure of consideration.

### NINTH AFFIRMATIVE DEFENSE

33.     Plaintiff's Complaint and the claims alleged therein are barred in whole or in part by insufficiency of process and/or insufficiency of service of process.

### TENTH AFFIRMATIVE DEFENSE

34.     Plaintiff's damages, if any there be, which is specifically denied, were caused or brought about by intervening or superseding acts of others over whom Defendants have no

control or right of control, and for whose acts Defendants are therefore not responsible.

## RESERVATION OF AFFIRMATIVE DEFENSES

35.     Defendants specifically reserve the right to assert additional affirmative defenses that may be discovered during the pendency of this action.

## PREMIER MEDICAL, INC. AND VESSEL MEDICAL, INC.'S, COUNTERCLAIM

Defendants/Counterclaim Plaintiffs, Premier Medical, Inc. and Vessel Medical, Inc., by counsel, and for their Counterclaim against Plaintiff/Counterclaim Defendant, Physicians Primary Care, PLLC ("PPC") state and allege as follows:

## PARTIES

1.     At all times relevant herein, Premier Medical, Inc. ("Premier") was and is a South Carolina corporation, with its principal place of business located at 6000A Pelham Road, Greenville, South Carolina, 29615.

2.     At all times relevant herein, Vessel Medical, Inc. ("Vessel") was and is a South Carolina corporation with its principal place of business located at 6000A-1 Pelham Road, Greenville, South Carolina, 29615.

3.     At all times relevant herein, Plaintiff/Counterclaim Defendant PPC was and is a Kentucky limited liability company with its principal place of business located at 1804 East 10th Street, Jeffersonville, Indiana, 47130.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over the parties to this Counterclaim by virtue of 28 U.S.C. § 1332(a)(1), or otherwise.  Pursuant to 28 U.S.C. § 1441(b), neither

Defendant is a citizen of Indiana, the state in which this action was brought and the state in which Plaintiff is a citizen. The amount in controversy in this Counterclaim exceeds $75,000.00 exclusive of interest and costs.

5.     Venue is appropriate in this Court pursuant to Title 28, United States Code § 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

6.     Premier is in the business of providing medical laboratory testing services and related goods and services. Such laboratory testing services are typically performed at its facility located in Greenville, South Carolina where it operates a medical laboratory that is duly certified to provide testing. It is affiliated with Vessel, but is a separate and distinct legal entity from Vessel.

7.     Vessel is in the business of sales, installation, and service of medical and laboratory equipment; staffing solutions for medical laboratory operations; consulting work regarding medical and laboratory equipment and operations; and related goods and services. It is affiliated with Premier, but is a separate and distinct legal entity from Premier.

8.     In 2015, Premier and/or Vessel began to provide laboratory testing services for PPC, with lab testing performed in a facility in Greenville, South Carolina. Pursuant to a verbal agreement between PPC and Vessel and/or Premier, there was an agreed-upon $50.00 per sample fee for these services. PPC was duly invoiced for these amounts. To date, although having paid certain portions of the relevant invoices, PPC has failed to meet its agreed-upon obligations for such testing services and related goods and services performed by Premier and/or Vessel. The

balance due and owing for such services is not less than $160,200.73. Demand has been made upon PPC for payment of said sum; however, payment has not been forthcoming.

9.    Subsequently in approximately March, 2016, Vessel began to provide test methodology, staffing, and other services for PPC's in-house laboratory located in Jeffersonville, Indiana. Specifically, Vessel provided testing protocols and methodologies, and staffing by a Ph.D. chemist, Yujing Wen (a/k/a Wendy Ma) to staff PPC's in-house lab and serve as director in compliance with state and federal statutes and regulations for medical laboratories. Federal law and/or Indiana state law establish minimum standards for medical laboratories that require that a laboratory have professional staff that serve as director with credentials equivalent to Ms. Wen. Vessel and/or Premier provided additional equipment, consulting, staffing, and/or services so that PPC's in-house lab could operate in a manner consistent with state and federal statutes and regulations for medical laboratories.

10.    Ms. Wen entered into a Non-Disclosure, Non-Solicitation, and Non-Competition Agreement with Vessel and all affiliated entities on or about March 28, 2016 ("Wen Agreement"). Among other provisions, the Wen Agreement required that Ms. Wen not disclose trade secrets, as defined in the agreement, belonging to Vessel at any time, and required that she not use or disclose any confidential information, as defined in the agreement, for a period of 18 months after termination of her employment. The Wen Agreement contained a covenant by Ms. Wen not to engage in activities competitive with the business of Vessel anywhere within a radius of 20 miles from the location at which she was working for Vessel at the time of termination for a period of 18 months after termination. Further, in the Wen Agreement, Ms. Wen covenanted and agreed that all right, title and interest in any developments, discoveries, trade secrets, secret processes, and the like shall be and shall remain the exclusive property of Vessel. Moreover, the

Wen Agreement provided that breach of its terms would cause irreparable harm to Vessel; that Vessel would be entitled to temporary and permanent injunctive relief; and that Vessel would be entitled to all costs and fees incurred by Vessel, including attorneys' fees.

11.     Upon information and belief, PPC was aware of the existence and terms of Ms. Wen's agreement with Vessel.

12.     With the knowledge, agreement, acquiescence, and/or ratification of PPC, Ms. Wen developed and provided protocols and methodologies to be used with certain laboratory testing for PPC.  At all relevant times, Ms. Wen and PPC knew and understood that such protocols and methodologies were the sole and exclusive property of Vessel and/or Premier and constituted trade secrets and/or confidential information.  Ms. Wen used said protocols and methodologies during the time that she staffed the PPC in-house laboratory as an employee of Vessel.

13.     Pursuant to a verbal agreement between PPC and Vessel and/or Premier, there were agreed-upon fees for the staffing, equipment, consulting, and/or other services performed by Premier and/or Vessel and pertaining to PPC's in-house lab, including but not limited to the services provided by Ms. Wen; equipment and supplies provided to PPC by Vessel and/or Premier; and the protocols and methodologies to be used by PPC in its in-house lab. The fees included but were not limited to a $35.00 methodology fee per test performed at the Jeffersonville, Indiana facility.  PPC was duly invoiced for these amounts.  To date, PPC has paid none of its agreed-upon obligation for such protocols and methodologies, staffing, equipment, consulting, and/or other services performed by Premier and/or Vessel.  There is due and owing for the agreed upon services a sum of not less than $385,898.16.  Demand has been made upon PPC for payment of said sum; however, payment has not been forthcoming.

14.     Pursuant to a verbal agreement between PPC and Vessel and/or Premier, Vessel agreed to occupy a portion of the building in which PPC has its primary place of business, located at 1804 East 10th Street, Jeffersonville, Indiana, 47130.  Vessel acknowledges that PPC and Vessel agreed that fair market value of the space would be $2,500.00 per month; however, Vessel did not make monetary payments to PPC, but rather offset this amount from the amounts due for services performed but not paid for by PPC.  Vessel states that the amount of "rent" that would have been owed at $2,500.00 per month was far less than the unpaid amounts due and owing to Vessel and/or Premier at all pertinent times by PPC.

15.     Vessel and/or Premier responded to multiple inquiries from PPC regarding the basis for invoices delivered to PPC.  Although most charges should have been self-explanatory and undisputed, Vessel provided explanation for the charges reflected in invoices to PPC. Despite Vessel providing adequate and reasonable documentation and explanation of the services provided and amounts owed, PPC has failed to make payment on the amounts due and owing, even for amounts that should have been undisputed.

16.     In 2016, Jefferey A. Campbell, M.D., principal of PPC, advised Vessel that PPC no longer needed Ms. Wen's services from Vessel because PPC had independently located its own replacement chemist.  In reliance on this representation, and after unsuccessfully attempting to find an appropriate re-assignment for Ms. Wen, Vessel informed Ms. Wen that her employment would be terminated. Without Vessel's knowledge, consent, or permission, PPC hired Dr. Wen.  Shortly thereafter, Vessel learned that the new chemist allegedly independently located by PPC was in fact Ms. Wen, who immediately commenced employment with PPC, operating PPC's in-house lab.  Vessel would not have terminated Ms. Wen's employment but for

its reasonable reliance on PPC's representation that PPC had independently obtained the services of a chemist.

17.    When operating the in-house lab as an employee of PPC, Ms. Wen continued to use the protocols and methodologies that she had developed as an employee of Vessel, which are based upon confidential, proprietary information, policies, methodologies and protocols maintained and developed by Vessel.

18.    Vessel made demand upon PPC to cease and desist from utilizing the policies, methodologies and protocols developed by Ms. Wen in reliance upon Vessel's information while she was an employee of Vessel. Nevertheless, PPC has continued to use Ms. Wen as its employee and has continued to utilize the protocols and methodologies that she developed as an employee of Vessel, without compensation to Vessel.

19.    Vessel and/or Premier have sustained damages directly and proximately caused by PPC's representations, its hiring of Ms. Wen, and its use of Vessel's protocols and methodologies in an amount in excess of $75,000.00.

## COUNT I: BREACH OF AGREEMENT

20.    Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

21.    PPC breached its agreement with Vessel and/or Premier to pay per sample fees for lab tests performed in the South Carolina and Indiana facilities.

22.    Vessel and Premier have been damaged in an amount in excess of $75,000.00, exclusive of interest and costs, by PPC's breach of said agreement.

## COUNT II: UNJUST ENRICHMENT

23.    Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

24.     In the alternative to Count I, PPC has been unjustly enriched by its receipt of laboratory testing services and related goods and services, under such circumstances that it would be inequitable for PPC to retain the benefits of same without making payment to Premier and/or Vessel.

## COUNT III: BREACH OF AGREEMENT

25.     Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

26.     PPC breached its agreement to pay agreed-upon fees for the protocols and methodologies, staffing, equipment, consulting, and/or other services performed by Premier and/or Vessel and pertaining to PPC's in-house lab, including but not limited to the services provided by Ms. Wen; equipment and supplies provided to PPC by Vessel and/or Premier; and the protocols and methodologies to be used by PPC in its in-house lab.

27.     Vessel and Premier have been damaged in an amount in excess of $75,000.00, exclusive of interest and costs, by PPC's breach of said agreement.

## COUNT IV: UNJUST ENRICHMENT

28.     Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

29.     In the alternative to Count III, PPC has been unjustly enriched by its receipt and use of protocols and methodologies, staffing, equipment, consulting, and/or other services performed by Premier and/or Vessel and pertaining to PPC's in-house lab, including but not limited to the services provided by Ms. Wen; equipment and supplies provided to PPC by Vessel and/or Premier; and the protocols and methodologies to be used by PPC in its in-house lab, under such circumstances that it would be inequitable for PPC to retain the benefits of same without making payment to Premier and/or Vessel.

14

## COUNT V: MISAPPROPRIATION OF TRADE SECRETS

30.    Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

31.    PPC was able to obtain access to Vessel's and/or Premier's trade secrets by its representations to Vessel and/or Premier inducing Ms. Wen's termination by Vessel and its hiring of Ms. Wen, including but not limited to the protocols and methodologies developed by Ms. Wen as an employee of Vessel, as well as other confidential information, methods, processes, formulas, and procedures used by Vessel and/or Premier in the conduct of their business.  All such protocols and methodologies developed by Ms. Wen as an employee of Vessel, confidential information, methods, processes, formulas, and procedures used by Vessel and/or Premier in the conduct of their business constituted trade secrets as defined by the Indiana Uniform Trade Secrets Act, Indiana Code §§ 24-2-3-1 through 24-2-3-8, and otherwise.

32.    Vessel's and/or Premier's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

33.    Vessel and Premier used reasonable efforts under the circumstances to maintain the secrecy of their trade secrets.

34.    Ms. Wen did not have Vessel's and/or Premier's express or implied consent to disclose or use Vessel's and/or Premier's trade secrets.

35.    PPC knew, or had reason to know, that Ms. Wen was not authorized to use or disclose Vessel's and/or Premier's trade secrets, and that it acquired Vessel's and/or Premier's trade secrets from Ms. Wen under circumstances giving rise to a duty for it to maintain the secrecy and limit the use of those trade secrets.

36.     PPC did not have Vessel's and/or Premier's express or implied consent to use Vessel's and/or Premier's trade secrets.

37.     PPC used Vessel's and/or Premier's trade secrets to operate its in-house lab.

38.     PPC's actions constitute misappropriation of Vessel's and/or Premier's trade secrets pursuant to the Indiana Uniform Trade Secrets Act, Indiana Code §§ 24-2-3-1 through 24-2-3-8, and otherwise.

39.     Vessel and Premier are entitled to all remedies available pursuant to the Indiana Uniform Trade Secrets Act, Indiana Code §§ 24-2-3-1 through 24-2-3-8, pursuant to common law, and otherwise.

40.     Vessel and Premier were damaged by PPC's misappropriation of Vessel's and/or Premier's trade secrets in an amount in excess of $75,000.00, exclusive of interest and costs.

41.     PPC's misappropriation was willful and malicious; therefore, Vessel and Premier are entitled to an award of exemplary damages, and are entitled to recover their reasonable attorney's fees incurred in this action.

### COUNT VI: TORTIOUS INTERFERENCE WITH CONTRACT

42.     Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

43.     Ms. Wen entered into a valid and enforceable Non-Disclosure, Non-Solicitation, and Non-Competition Agreement with Vessel and all affiliated entities ("Wen Agreement").

44.     Upon information and belief, PPC was aware of the existence and terms of the Wen Agreement.

45.     PPC intentionally interfered with the contractual relationship between Ms. Wen and Vessel and further intentionally caused Ms. Wen to breach her agreement with Vessel by its acts and omissions, including but not limited to: inducing Vessel to terminate Ms. Wen's

employment by advising Vessel that PPC had independently found a chemist to staff the in-house lab at PPC; hiring Ms. Wen immediately; and employing and inducing Ms. Wen to utilize the protocols and methodologies developed by Ms. Wen while she was an employee of Vessel in her operation of the PPC in-house lab as an employee of PPC.

46.     PPC was not justified or privileged in interfering with the contractual relationship between Ms. Wen and Vessel.

47.     PPC's motives were improper in interfering with the contractual relationship between Ms. Wen and Vessel.

48.     Vessel and/or Premier were damaged by PPC's tortious interference with contract in an amount in excess of $75,000.00, exclusive of interest and costs.

## COUNT VII: UNJUST ENRICHMENT

49.     Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

50.     In the alternative to Count V and Count VI, PPC has been unjustly enriched by its misappropriation and use of Vessel's and/or Premier's protocols and methodologies, trade secrets, and/or confidential information, and by its wrongful recruitment and hiring of Ms. Wen, and by its misrepresentations and interference with Ms. Wen's employment relationship Premier and/or Vessel, under such circumstances that it would be inequitable for PPC to retain the benefits of same without making payment to Premier and/or Vessel.

## COUNT VII: INJUNCTIVE RELIEF

51.     Vessel and Premier restate and realleged all prior paragraphs as if set forth in full.

52.     Vessel and Premier will be irreparably harmed should PPC continue to misappropriate Vessel's and/or Premier's trade secrets, and/or continue to interfere with and cause Ms. Wen to breach the Wen Agreement.

53.    The remedy of damages is not fully adequate in this action to prevent such irreparable harm to Vessel and/or Premier.

54.    PPC is entitled to injunctive relief in the form of a temporary restraining order, a permanent injunction, and/or a temporary injunction to prevent PPC from continuing to misappropriate Vessel's and/or Premier's trade secrets, and/or continuing to interfere with and cause Ms. Wen to breach the Wen Agreement.

55.    PPC is entitled to an award of its costs an attorneys' fees incurred in protecting its trade secrets and enforcing the Wen Agreement.

WHEREFORE, Defendants/Counterclaim Plaintiffs, Vessel Medical, Inc., and Premier Medical, Inc., demand the following relief:

1.    Judgment against Plaintiff/Counterclaim Defendant, Physicians Primary Care, PLLC, on the claims herein;

2.    Injunctive relief in the form of a temporary restraining order, permanent injunction, and/or temporary injunction prohibiting PPC from continuing to misappropriate Vessel and/or Premier's trade secrets, and/or continuing to interfere with and cause Ms. Wen to breach the Wen Agreement;

3.    Costs incurred in this action;

4.    Pre-judgment and post-judgment interest;

5.    Reasonable attorney's fees;

6.    Punitive damages;

7.    Trial by jury;

8.    Any and all other relief to which Defendants/Counterclaim Plaintiffs may be entitled.

Respectfully submitted,

MCBRAYER, MCGINNIS, LESLIE
  & KIRKLAND, PLLC
201 East Main Street, Suite 900
Lexington, Kentucky  40507
(859) 231-8780
(859) 231-6518 facsimile
 bjohnson@mmlk.com

*/s/ Brandon K. Johnson*
BRANDON K. JOHNSON
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

    It is certified that a true copy of the foregoing has this 7th day of June, 2016, been served via mail and/or electronic service upon the following:

Michael W. McClain
McClain DeWees, PLLC
6008 Brownsboro Park Blvd., Suite H
Louisville, Kentucky 40207
Ph: (502) 749-2388
Fax: (888) 779-7428
mmcclain@mcclaindewees.com
***Attorneys for Plaintiff***

        */s/ Brandon K. Johnson*
        COUNSEL FOR DEFENDANTS

4812-7824-0074, v. 1

19